non-patentability, and as, by reason of such concession, no testimony was taken to show the great utility of the invention, the only question before me is that of novelty. Three witnesses, Stiles W. Curtis, William N. Woodruff, and Hezekiah K. Sears, were introduced by the defendant to show an invention, a reduction to practice, and a disclosure of the invention to the public, prior to July, 1862. The attempts of Mr. Curtis to use woolen wicks were manifestly in the nature of mere experiments. The use of a single wick by Mr. Woodruff is not proved to have been before the date of the invention by the patentee. The use of satinet wicks by H. K. Sears, in 1836 and 1837, was somewhat experimental, and, if his testimony had been confined to a use in those years, would have been insufficient. But he also testifies that in January and in February, 1862, he sold ordinary tin lamps with flat woolen wicks, which he made himself, to the soldiers of the Union army in Virginia and in the District of Columbia, and informed and showed the purchasers that woolen wicks could be used in the lamps. His testimony I believe to be true. The important question upon this state of facts is whether, inasmuch as the defendant takes the burden of proof, and must overcome by preponderating testimony the prima facie evidence which is furnished by the letters patent, the testimony of a single witness is sufficient to create such a preponderance. In cases in which the priority of the invention of a machine was the subject of controversy, I should not be willing to rely upon the testimony of a single witness that he had made such a structure, and had antedated the patent, unsupported by the presence of the machine itself. The bare recollection of one witness in regard to the peculiar construction of a piece of machinery, especially if the structure is one of a complex character, is not ordinarily sufficient evidence to defeat a patent. But in this case the invention of the patentee was of the simplest character, and consisted of a strip of woolen cloth cut into the shape of a lamp wick. Much less testimony should be demanded to satisfy a court that a very simple invention had been anticipated, than would be necessary to prove the fact that previously to the alleged date of an invention originally requiring much labor, skill, and ingenuity, another person had made and completed the same machine or article. The evidence should be of such a character as to satisfy the court that the prior invention of the particular article in controversy took place. As there is no improbability from the character of the invention that Mr. Sears might not also have formed a wick from woolen cloth, and as I have no doubt that he did peddle flat woolen wicks in January, 1862, among the soldiers, I am of opinion that the patentee was not the first and original inventor of the patented article, and that the bill should be dismissed.

RILEY (DUNHAM v.). See Case No. 4,155.

## Case No. 11,838.

### RILEY v. MAXWELL.

[4 Blatchf. 237.] 1

Circuit Court, S. D. New York. Dec. 3, 1858.

INTEREST — RECEIPT FOR PRINCIPAL — ACTION FOR INTEREST.

Where an excess of duties, which had been exacted by a collector, was repaid, but without interest, and the payment was accepted, *held*, that a separate suit for the interest on the excess could not afterwards be maintained, even though the party, at the time of receiving the principal, claimed to reserve his right to the interest.

This was an action [by Theodore W. Riley] against [Hugh Maxwell,] the collector of the port of New York, to recover interest on an excess of duties paid. The excess, after having been exacted, was repaid to the plaintiff, but without interest, and its payment was acknowledged by him in a receipt, which stated that he asked payment of the interest on the excess, and reserved his legal rights. At the trial, a verdict was taken for the plaintiff, subject to the opinion of the court.

John S. McCulloh, for plaintiff.
John McKeon, Dist. Atty., for defendant.

NELSON, Circuit Justice. The plaintiff precluded himself from bringing a separate suit for the interest, after accepting the principal, even though he, at the time, claimed to reserve the right to do so. There must be a judgment for the defendant.

## Case No. 11,839.

### RILEY v. The OBELL MITCHELL.

[N. Y. Times, May 16, 1861.]

District Court, S. D. New York. 1861.

CONSUL — PURCHASE OF VESSEL SOLD UNDER CONSULAR AUTHORITY — FRAUD — BOTTOMRY — SHIPPING.

[1. A United States consul in a foreign port, under whose authority a vessel is sold, is within the rule forbidding a trustee to acquire an interest in property put to public sale under his agency.]

[2. A sale by the master in a foreign port for necessary charges, held under the authority of the United States consul, is conclusively presumed to be fraudulent when the purchase money was secured by the consul's note, upon an agreement that the ship should be transferred to trustees for the benefit of the consul's wife.]

[3. A fraudulent sale by the master in a foreign port for necessary charges does not affect the lien arising upon a prior bottomry bond.]

[This was a libel by Theodore W. Riley against the ship Obell Mitchell, Thomas W. Napier, claimant, upon a bottomry bond.]

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]